UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH
CIVIL ACTION NO. 5:23CV-P132-JHM

**REGINALD L. GRIDER, JR.** **PLAINTIFF**

**v.**

**COOKIE CREWS *et al*.** **DEFENDANTS**

<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiff Reginal L. Grider, Jr., filed the instant *pro se* prisoner 42 U.S.C. § 1983 action. The second amended complaint[1] (DN 26) is before the Court for initial review pursuant to 28 U.S.C. § 1915A.  For the reasons stated below, the Court will allow some of Plaintiff's claims to proceed and dismiss other claims.

## I. SUMMARY OF FACTUAL ALLEGATIONS

Plaintiff, a convicted inmate at the Kentucky State Penitentiary (KSP), sues the following Defendants:  Cookie Crews, the Commissioner of the Kentucky Department of Corrections (KDOC); Randy White and Scott Jordan, Deputy Commissioners of KDOC; Laura Plappert, KSP Warden; Jacob Bruce, KSP Deputy Warden; Lauren Massey and Alex Hearell, KSP Unit Administrators; Sasha Primozich, Duncan Adams, and Amy Fisher, KSP Unit Administrators and/or Case Treatment Officers; Berton Bare, KSP Internal Affairs Captain; Darren Larue and Ryan Inglish, KSP Internal Affairs Sergeants; Gova Harper, Assistant Security Threat Group Coordinator; Kimberly Anderson, KSP Lieutenant; Alex Mathis, KSP Recreation Leader; John and Jane Doe Defendants, identified as "Administrative Personnel" of KDOC; and John and Jane Doe Defendants, identified as "Administrative/Security Personnel" of KSP.  Plaintiff sues each

---

[1] By prior Memorandum and Order, the Court directed Plaintiff to file a second amended complaint and stated that the second amended complaint would supersede the original and amended complaints and other purported amendments to the complaint (DN 15).

Defendant in his or her official capacity for injunctive relief and in his or her individual capacity for damages.

Plaintiff states that in April 2021 a search of his cell in the Restricted Housing Unit (RHU) resulted in John Doe officers finding a piece of paper that contained "random thoughts and notes regarding the trademarking [of] his media platform Touch$Money."  He[2] alleges that John and Jane Doe personnel of KSP and KDOC "made a determination that Touch$Money was to be labeled as a Security Threat Group (STG)."  He asserts that during the COVID-19 pandemic, KSP administration limited prisoners' access to telephones to short periods of time each day, which caused KSP gangs "to decide that each gang would secure a phone solely to be used by members of that gang."  Plaintiff states, "Lesbian-Bi-Gay-Queer-Transgender (LBGQT) prisoners are not allowed to be affiliated or members of any gang in the Kentucky prison system."  He asserts that he is a LBGQT prisoner.  He states, "In order to secure a phone, Grider utilized his media platform idea Touch$Money which has a non-traditional all inclusive premise to create a religious organization."

Plaintiff asserts that he and two other inmates "were involved in a love triangle for which KSP administration was well aware of" and that Defendants Bare, Plappert, Massey, and Fisher "with discriminatory animus actually placed . . . administrative conflicts (keep separate order) in Kentucky Offender Management System . . . because they are LBGQT inmates."  He states that Defendant Inglish made another search of his cell and found papers "that appeared to be STG related" and which "allegedly made references to A.C.A., TM with the T written on top of the M, T-checks and enforcer's jobs."  He reports that on January 21, 2023, he "was convicted of a Category 7-8 'involved or convicted of 3 or more STG offenses within 2 years' premised upon the

---

[2] According to the second amended complaint, Plaintiff is transgender.  Plaintiff uses male pronouns in referring to himself throughout the second amended complaint, and the Court will do the same herein.

papers found . . . , even though at this time he had not been assessed as a member of the STG Touch$Money." He states that on January 30, 2023, as a result of other "suspicious paperwork" found in another inmate's cell, he was convicted of another Category 7-8 and he was not allowed to view camera footage in connection with the incident. Later in the complaint, Plaintiff states that after another cell search he was convicted of a Category 6-3 for "'possession or promoting dangerous contraband'" in a hearing where he was not allowed to be present.

Plaintiff states that in mid-December 2022, he wrote to Defendant Crews "requesting that she initiate an investigation into the abuse of authority at KSP concerning the unjust and discriminatory animus by the KSP Administration and Defendants against Grider and other LBGQT inmates." He continues, "To date, Defendant Crews has refused or otherwise failed to intervene by initiating an investigation, or even respond to Grider's letter."

Plaintiff states that, "to bring attention to the deplorable conditions of RHU and the discriminatory animus being displayed by the KSP Administration and Defendants" towards Grider and other LBGQT Defendants, he and two other inmates "silently engaged in a hunger strike, and on December 26, 2022, were placed on suicide watch." He asserts that the conditions on suicide watch are "unconscionable" and unsanitary and the cells "have dried feces and urine on the floor and walls, low cell temperature, going without food, clothing, being provided no blankets, being forced to lay on the freezing feces and urine stained floor without a mattress for long periods of time." He states that the conditions are "intended as a form of punishment every day, as the mattresses are removed forcing Grider and other to lay/sit on metal and concrete and walking around in the cell with bare feet."

Plaintiff alleges that another inmate "began to panic and wrote a letter to Grider discussing a plan to work as an informant for Defendants Bare and Fisher in exchange for having the

administrative conflict lifted or transfer to another facility." He states, "The letter contained names of numerous STG members and [the inmate's] plan to snitch on them. [] The letter was intercepted in route to Grider and found its way into the hands of the very STG members who were named in it." He states that he and the other inmates "were labeled rats and became targets for the STG's." He states that John and Jane Doe employees of KSP and KDOC "classified and certified Grider's non-traditional all-inclusive religious organization 'Touch Money' as a STG" and named Grider "as the leader of the STG, and a snitch" and "made Grider and all associated with the STG – targets by all STG's." Plaintiff asserts that on February 28, 2023, "unknown members of two STG at KSP came together and declared war on anyone associated with Touch$Money and green-lighted any/all attacks on them."

Plaintiff alleges that the John and Jane Doe Defendants and Defendants Crews, Bare, Fisher, Harper, Larue, and Inglish "were all aware of, disregarded and were deliberately indifferent to the substantially real and potential risk to an attack on Grider's life by members of various STG's at KSP." Plaintiff states that he was placed on Administrative Control (AC) status on February 28, 2023, "due to allegedly posing a threat to himself or the safety of the institution, including excessive involvement in STG activities" and "based on the nature, severity and frequency" of disciplinary reports.

He states that on March 1, 2023, he and other inmates were being escorted to their cells in mechanical wrist and leg restraints. He said he and four other inmates, including inmates Adam Combs and Brian Batey, "went up the first flight of stairs leading up to 13 walk level then allegedly began striking one another." Afterward, Plaintiff states that Defendant Mathis "allegedly located an institutionally made weapon on the floor where the altercation occurred." He states that inmates Combs and Batey had blood on their shirts and had "puncture wounds."

4

Plaintiff states that Defendant Anderson investigated the March 1, 2023, altercation and that the other inmates stated that they did not know what happened.  He maintains that the decision to put him on AC status "was premised on unfounded and unverified facts."

Plaintiff asserts the following:

On April 4, 2023, around 9:52 am, while on outside rec, Grider believing his life was in danger, moved his restraints from behind him to his front. [] Justifiably at 9:53 am, Grider exited the rec cage only to be confronted by Batey and Combs who had their wrist restraints removed. []  Both Batey and Combs had weapons in their hands as they rushed out of their cages. [] Combs grabbed a plastic chair and began to hit Grider, as Batey goes at Grider with a weapon in his hand. [] Grider attempts to flee towards other being hit by the chair thrown by Combs only to find himself surrounded by Combs [and two other inmates].

Plaintiff states that on May 15, 2023, as part of the investigation of the incident by Defendant Anderson, a non-Defendant Recreation Leader, stated the following:

I/M Batey was no longer cuffed and swinging his hands freely and yelled at the inmates to get on the ground.  Corrections Officer (C/O) Silcox sprayed Grider, Combs and Batey with OC (pepper spray) yet they continued to fight, I used the Taser 7 and deployed a dart pack on I/M Batey which was unsuccessful, I deployed a second dart pack striking Batey, I/M Batey received a full NMI and fell to the ground, once on the ground I turned around and grabbed I/M Combs by the shirt, as Combs, [and two other inmates] were all trying to get to I/M Grider, I/M Combs looked at me and being uncuffed warned me to let go of him, at this time I had dart packs in I/M Batey, so it was just myself against 4 inmates, so I let go of I/M Combs.

Plaintiff reports, "At the conclusion of this event 4 institutionally made weapons along with an institutionally made handcuff key and a shim were found in the area" and one of the other inmates "was also found to have 6 alleged puncture wounds."

Plaintiff states that the letter he sent to Defendant Crews referenced above was forwarded to Defendant White "establishing that he had personal knowledge of the facts, events, incidents and conditions" regarding the fact that Plaintiff was LBGQT, that searches of his property had yielded information indicating that Touch$Money was an STG, and that he had been disciplined

for it.  He asserts that on February 22, 2023, Defendant White wrote a letter to him stating that he had forwarded his letter to Defendant Jordon, the KSP Warden at the time, to make him aware of his concerns and take any necessary action.  Plaintiff states that this demonstrates that Defendant White "failed to intervene when having a duty to do so, as Grider's concerns included those relative to Defendant Jordon and his acquiescence in, and refusal/failure to address the arbitrary discriminatory actions Grider was subjected to by all Defendants . . . ."  Plaintiff states that he then wrote to Defendant Jordon "with inquiry into the status of the matter" and that Defendant Jordon responded that he could initiate a transfer through Defendant Adams.  Later in the complaint, Plaintiff maintains that he requested a transfer "as directed by Defendant Jordon" but the request was denied by Defendants Adams and Hearell.

Plaintiff states that Defendants Crews, White, Jordon, Plappert, Massey, Bare, Fisher, Bruce, Larue, Harper, Primozich, and Adams had knowledge that Touch$Money was classified as an STG, that members of two other STGs had "declared war" on Touch$Money, and that the March 1, 2023, altercation occurred "establishing that Grider's life was/is in danger and/or a reasonable inference could be drawn therefrom that a substantial risk of serious harm existed towards Grider due to being classified as a LBGQT inmate and certified STG member."  He states that despite having this knowledge Defendants Crews, White, Jordon, Plappert, Massey, Bare, Fisher, Bruce, Larue, Harper, Primozich, and Adams:

> refused to separate Grider from being in direct contact with members of the various STG's that had declared war on – greenlighting assaults on him and members of Touch$Money, and/or failing to properly investigate these documented conflicts and potential harm to Grider, acting in concert to keep each other's conduct hidden, failing to investigate the acts of retaliation . . . and failing to intervene when having authority to do so, which lead to the melee on April 4, 2023 . . . which was a direct assault on the life of Grider.

Plaintiff reports that on April 11, 2023, he was moved to an "observation dry cell" for six days and was again "placed in a freezing cell, with no clothes despite being documented 'transgender,' with no blanket, personal hygiene, or working water, was forced to have bowel movement in a 5 gallon bucket with a bag in it, and was not allowed to wipe." He states that the "premise" for putting him in that cell "was under the specious assertion that he had a hand-cuff key, keeping up the rouge by wanding his feces with a hand held metal detector."

Plaintiff states that the Classification Committee had recommended him for AC "premised on specious findings that he is clearly in need of a more structured environment than that already existing in RHU, attaching the Transition Unit Program (TUP) as a programing requirement before release." He maintains, "Once an inmate has been recommended and approved for the TUP, it is a <u>must</u> <u>do</u> or <u>remain</u> in RHU until such time of completion." Plaintiff states that, even though he has had clear conduct, he has remained on the list for TUP longer than other inmates. He asserts that he was told in June 2023 by Defendant Massey that he would be placed in an upcoming TUP class but that on July 3, 2023, Defendant Adams "conducted a cell search and allegedly found a hand cuff key diagram, which consisted solely of 2 circles drawn on a piece of paper." He states that this prevented him from entering the July 2023 TUP class. He states that he has "repeatedly been subjected to random cell searches right before he is slated for entry into the TUP class, that always results in a DR preventing him from entering the class."

Plaintiff also asserts that Defendant Crews and John and Jane Doe Defendants made changes to prison policies and procedures regarding STG definitions by issuing a memorandum on February 25, 2022. Plaintiff asserts that the Classification Committee's recommendation to place him on AC "has been speciously premised upon alleged involvement in STG activities, and while he may appeal these administrative decisions, there is no process in which to challenge the

classification and certification of Grider being a member of a STG." He continues that the refusal

to provide "any administrative avenue or remedy to challenge STG classifications allows all

Defendants each and together to act covertly under the guise of an AC classification with impunity

against Grider and others they have secretly designated as STG members, that there is no way to

challenge." He further states as follows:

> The generality of the STG revisions of CPP 15.2 do not provide a procedural due
> process means for an inmate to challenge a STG designation to demonstrate that he
> is not a STG member, nor does CPP 15.2, or any other related classification policy,
> establish a definitive due process notification to an inmate how to conform his
> behavior, or challenge any arbitrary assessment and designations that he is a STG
> member, which as designed by Defendants permits them to arbitrarily pursue
> administrative STG retributions under the guise of such vague definitions against
> Grider every time he talks to others, writes a letter to others, congregates with others
> who all share equal ideology perspectives (for example Trump supporters) –
> matters that are constitutionally protected. [] In fact these very definitions here
> have permitted all Defendants individually and in concert to classify Grider as a
> STG member due to him being a LBGQT inmate under such discriminatory animus
> that evades administrative oversight or judicial review.

Plaintiff next states that on two dates, August 2 and 27, 2023, John and Jane Doe officers

opened cell doors and left them open for "several moments" where "antagonistic STG members

were also housed" but on both occasions "they did not seize the opportunity to attack Grider."

Plaintiff additionally states, "Grider is a transgender prisoner suffering from gender

dysphoria and is a vulnerable inmate. [] Transgender individuals are a suspect class subjected to

discriminatory animus and bear all the characteristics of a quasi-class warranting strict scrutiny."

He continues, "The Defendants each and together have elected to ignore the psychodynamics of

Grider's gender dysphoria, electing instead to construe his alleged behavior acts as being STG

related." He alleges that the "collective refusal by Defendants" to address his gender dysphoria

"as being serious medical condition with its attending psychosocial symptoms, involves deliberate

indifference to the safety of Grider's health, well-being and life in the prison setting . . . ." He

8

states that their "unconscionable acts and omission to act under their STG designation of Grider potentially subjects him to a risk of death at the hands of others, that is real and nonspeculative as factually established herein."  He asserts that Defendants Crews, White, Jordon, and the John and Jane Doe KDOC employees "have established a pattern recklessness, callousness, and deliberate indifference to the psychotomimetic ramifications of Grider and other gender dysphoria prisoners . . . constituting a system wide failure to appropriately act and respond to the gender dysphoria issue prevailant in the KDOC prison system."

Plaintiff then sets forth the following seven causes of action:

(1) Defendant Crews, White, Jordon, and the John and Jane Doe Defendant employees of KDOC and KSP "have violated Grider's religious right to assemble with other LBGQT inmates for religious instruction and support asserting said assembly is STG related and banned."

(2) Defendants Crews, White, Jordon, Plappert, Bruce, Massey, Primozich, Bare, Larue, and Harper "have violated Grider's right to equal protection by discriminating against him because he is transgender."

(3) Defendants Crews, Fisher, Bare, Larue, Inglish, Harper, Anderson and the John and Jane Doe Defendant employees of KSP "were deliberately indifferent to Grider's safety by not taking his concerns seriously and failing to intervene and/or prevent him from being targeted by STG members and physically assaulted."

(4) Defendants Jordon, Plappert, Bruce, and the John and Jane Doe Defendant employees of KSP "have violated Grider's right to be free from cruel and unusual punishment."

(5) Defendants Crews, White, Jordon, Plappert, Bruce, Massey, Hearell, Primozich, Fisher, Bare, Larue, Inglish, Harper, and the John and Jane Doe Defendant employees of KSP and KDOC

"have violated Grider's right to protection from arbitrary STG designation that lead to the physical attacks."

(6) Defendants Crews, Plappert, Massey, Primozich, Adams, Fisher, Bare, Larue, Harper, Anderson, Mathis, and the John and Jane Doe Defendant employees of KSP and KDOC "have violated Grider's due process rights designating him as a STG member, absent a hearing in which to challenge this designation, nor any appeal of said designation coupled with mandatory behavior modification TUP treatment before being released from segregation."

(7) "All Defendants in concert, have set into action by illegitimate means and policy a system-wide façade purporting to be a legitimate penological interest aimed at combating STG concerns that with designed intent unconstitutionally promote the violation of Grider's U.S. Constitutional rights and limited freedoms."

As relief, Plaintiff requests the Court to order discovery be conducted, to set a scheduling order, and to award injunctive relief in the form of "rescind all STG designations, disciplinary action levied against him"; "immediate release from segregation"; adoption of California's STG policy; and implementation of a non-discriminatory policy protecting the rights of LBGQT prisoners in Kentucky.  He also seeks compensatory and punitive damages and costs.

## II. STANDARD

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the complaint, or any portion of it, if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  *See* § 1915A(b)(1), (2); *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

10

In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). Although this Court recognizes that *pro se* pleadings are to be held to a less stringent standard than pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), "[o]ur duty to be 'less stringent' with pro se complaints does not require us to conjure up unpled allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

### III. ANALYSIS

#### A. Causes of action listed by Plaintiff

The Court will first address each of the seven causes of action Plaintiff lists.

##### *1. Right to religious assembly*

With regard to Plaintiff's claims that Defendants violated his "religious right to assemble with other LBGQT inmates for religious instruction and support asserting said assembly is STG related and banned[,]" the Court construes the allegations in the second amended complaint as alleging violation of the Free Exercise Clause of the First Amendment and the Religious Land Use and Institutionalized Persons Act (RLUIPA).

The First Amendment of the United States Constitution mandates that Congress shall make no law prohibiting the free exercise of religion.  "Prisoners retain the First Amendment right to the free exercise of their religion."  *Hayes v. Tennessee*, 424 F. App'x 546, 549 (6th Cir. 2011) (citing *Walker v. Mintzes*, 771 F.2d 920, 929 (6th Cir. 1985)).  To state a free exercise claim under the First Amendment, Plaintiff must allege:  (1) that the belief or practice he seeks to protect is religious in his "own scheme of things," (2) his belief is sincerely held, and (3) the defendant's behavior infringes upon this practice or belief.  *See Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir. 1987) (citations omitted).  Similarly, RLUIPA "prohibits state and local governments from placing a 'substantial burden' on the 'religious exercise' of any inmate unless they establish that the burden furthers a 'compelling governmental interest' and does so in the 'least restrictive' way."  *Haight v. Thompson*, 763 F.3d 554, 559 (6th Cir. 2014) (quoting 42 U.S.C. § 2000cc-1(a)).  In order to state a claim for a RLUIPA violation, an inmate must allege that his "request for an accommodation [is] sincerely based on a religious belief" and that the defendant's "policy substantially burdened that exercise of religion."  *Holt v. Hobbs*, 574 U.S. 352, 360-61 (2015); *Cavin v. Mich. Dep't of Corr.*, 927 F.3d 455, 458 (6th Cir. 2019).

"[T]he touchstone for determining whether a religious belief is entitled to free-exercise protection is an assessment of whether the beliefs professed . . . are *sincerely* held, not whether the belief is accurate or logical."  *Colvin v. Caruso*, 605 F.3d 282, 298 (6th Cir. 2010) (emphasis in original) (internal quotation marks and citation omitted).  Similarly, under RLUIPA, the focus is on the sincerity of the prisoner's professed religious belief.  *Id.* (citing *Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005) (citations omitted)).

Plaintiff does not identify his religion, and he states no facts to show that a sincerely held religious belief motivated his request "to assemble with other LBGQT inmates for religious

instruction and support" other than his conclusory allegations. "[T]he 'mere assertion of a religious belief does not automatically trigger First Amendment protections. To the contrary, only those beliefs which are both sincerely held and religious in nature are entitled to constitutional protections.'" *Hernandez v. Pugh*, No. 4:12CV2040, 2013 U.S. Dist. LEXIS 445, 2013 WL 30194, at *7 (N.D. Ohio Jan. 2, 2013) (*Dehart v. Horn*, 227 F.3d 47, 51 (3d Cir. 2000) (en banc)). The second amended complaint contains no facts to allow the Court to draw the reasonable inference that Plaintiff states a sincerely held religious belief. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 555; *see also Goff v. Chambers-Smith*, No. 1:21-cv-315, 2021 U.S. Dist. LEXIS 104923, at *8-9 (N.D. Ohio June 4, 2021) (dismissing claim pursuant § 1915A finding that the inmate made no "specific allegation as to his religious beliefs or his belief system"); *Gambino v. Payne*, 12-CV-0824, 2013 U.S. Dist. LEXIS 46576, at *25 (W.D.N.Y. Mar. 29, 2013) (dismissing claim under § 1915A where the complaint was "devoid of any allegations that would establish that [the plaintiff] ha[d] a sincerely held religious belief"). Therefore, Plaintiff's claims under the First Amendment and RLUIPA will be dismissed for failure to state a claim upon which relief may be granted.

### 2. Equal protection

Plaintiff next alleges violation of his "right to equal protection by discriminating against him because he is transgender." Upon review of the second amended complaint, the Court will allow claims for violation of the Equal Protection Clause of the Fourteenth Amendment to proceed against Defendants Crews, White, Jordon, Plappert, Bruce, Massey, Primozich, Bare, Larue, and

Harper in their individual capacities for damages and in their official capacities for injunctive relief.[3]

### 3. Deliberate indifference to safety

As to Plaintiff's claims of "deliberate[] indifferen[ce] to Grider's safety by not taking his concerns seriously and failing to intervene and/or prevent him from being targeted by STG members and physically assaulted[,]" the Court construes the allegations in the second amended complaint as asserting claims for failure to protect in violation of the Fourteenth Amendment and will allow these claims to go forward against Defendants Crews, Fisher, Bare, Larue, Inglish, Harper, Anderson, and the John and Jane Doe Defendant employees of KSP in their individual capacities for damages and in their official capacities for injunctive relief.

### 4. Cruel and unusual punishment

Plaintiff also lists the following as a cause of action, Defendants Jordon, Plappert, Bruce, and the John and Jane Doe Defendant employees of KSP "have violated Grider's right to be free from cruel and unusual punishment." The Court finds that this allegation itself is too broad and conclusory to state a claim. *See Iqbal*, 556 U.S. at 678 (complaint not sufficient "'if it tenders 'naked assertion[s]' devoid of 'further factual enhancement'") (quoting *Twombly*, 550 U.S. at 555, 557). This claim will be dismissed for failure to state a claim upon which relief may be granted. The Court will address other allegations below which Plaintiff may have been invoking in alleging a claim for cruel and unusual punishment.

---

[3] Plaintiff sued Defendants in the official capacities for injunctive relief only. However, if he had sought damages against them in their official capacities, the claims would be subject to dismissal because state officials sued in their official capacities for monetary damages are not "persons" subject to suit under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Further, the Eleventh Amendment acts as a bar to claims for monetary damages against state employees or officers sued in their official capacities. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

### 5. Due process

Plaintiff's fifth and sixth listed causes of action assert violation of his "right to protection from arbitrary STG designation that lead to the physical attacks" and violation of his "due process rights designating him as a STG member, absent a hearing in which to challenge this designation, nor any appeal of said designation coupled with mandatory behavior modification TUP treatment before being released from segregation."  The Court construes the second amended complaint as alleging that his designation as a STG member violated the Fourteenth Amendment's Due Process Clause and will allow the claims to go forward against Defendants Crews, White, Jordon, Plappert, Bruce, Massey, Hearell, Primozich, Fisher, Bare, Larue, Inglish, Harper, Adams, Anderson, Mathis, and the John and Jane Doe Defendant employees of KSP and KDOC in their individual capacities for damages and in their official capacities for injunctive relief.

### 6. Conspiracy

Plaintiff's last listed cause of action is "All Defendants in concert, have set into action by illegitimate means and policy a system-wide façade purporting to be a legitimate penological interest aimed at combating STG concerns that with designed intent unconstitutionally promote the violation of Grider's U.S. Constitutional rights and limited freedoms."  This is also too broad and conclusory to state a claim and can be dismissed on this basis.

To the extent Plaintiff is attempting to allege a conspiracy claim based on this allegation and others in the second amended complaint, "[i]t is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).  In order to state a claim of conspiracy, Plaintiff must allege the elements that make up a conspiracy claim:  that a single plan existed; that the alleged co-

conspirators shared in the general conspiratorial objective to deprive Plaintiff of his constitutional or federal statutory rights; and that an overt act was committed in furtherance of the conspiracy that caused injury. *Hooks v. Hooks*, 771 F.2d 935, 944 (6th Cir. 1985).

A review of the second amended complaint reveals that Plaintiff has failed to meet the pleading standard required to state a conspiracy claim. Plaintiff's complaint is completely devoid of factual matter that would allow the Court to draw a reasonable inference that Defendants engaged in a conspiracy to violate his constitutional rights. Plaintiff does not plead the "specifics" of any alleged conspiracy such as "when, where, or how the defendants conspired." *Perry v. Se. Boll Weevil Eradication Found., Inc.*, 154 F. App'x 467, 477 (6th Cir. 2005). He fails to allege facts to show how more than 16 employees of KDOC and KSP all conspired to together to violate his rights. Plaintiff makes only vague and conclusory allegations with no underlying factual support. "The 'web of inference[s] is too weak' on the alleged facts to permit a finding, 'absent sheer speculation,' that [Defendants] shared . . . [an] unlawful objective." *Bazzi v. City of Dearborn*, 658 F.3d 598, 603 (6th Cir. 2011) (quoting *United States v. Sliwo*, 620 F.3d 630, 637 (6th Cir. 2010)). Therefore, Plaintiff's conspiracy claims will be dismissed for failure to state a claim upon which relief may be granted.

### B. Other potential claims

Mindful of its obligation to construe *pro se* allegations broadly, *Boag v. MacDougall*, 454 U.S. 364 (1982) (per curiam), the Court will examine other potential claims raised in the second amended complaint.

#### 1. Challenges to disciplinary convictions/procedures

Plaintiff makes numerous allegations concerning disciplinary proceedings against him and convictions for disciplinary reports. To the extent Plaintiff is alleging due process claims in

connection with these allegations, in *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that to recover damages for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid," a plaintiff must first establish that his "conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a . . . tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 486 (footnote omitted).  The favorable-termination requirement of *Heck* applies to prisoner allegations of due process violations in prison disciplinary hearings that result in the deprivation of good-time credits.  *Edwards v. Balisok*, 520 U.S. 641, 648 (1997).  The *Heck* and *Edwards* bar applies no matter the relief sought—damages or injunctive relief. *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005).

The second amended complaint is clear that Plaintiff was found guilty in the disciplinary proceedings about which he complains.  There is no indication that his disciplinary convictions have been reversed or otherwise invalidated.  If this Court were to find a violation of due process, such a finding would necessarily render his disciplinary proceedings invalid.  Accordingly, Plaintiff's claims challenging the disciplinary proceedings must be dismissed for failure to state a claim upon which relief may be granted.

### 2. Placement in disciplinary segregation

Moreover, to the extent that Plaintiff alleges a due process claim based on receiving disciplinary segregation in the form of AC status or requirement to undergo TUP programming in order to be released from AC, he also fails to state a claim.  A procedural due process claim requires a showing that (1) the plaintiff had a protected life, liberty, or property interest,  (2) the plaintiff was deprived of that interest, and (3) the defendants deprived him of that protected interest without adequate procedural rights.  *Thomas-El v. Smith*, No. 23-1304, 2024 U.S. App. LEXIS 5493, at

17

*4-5 (6th Cir. Mar. 6, 2024) (citing *Wedgewood Ltd. P'ship I v. Township of Liberty*, 610 F.3d 340, 349 (6th Cir. 2010)).  "[T]he Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement."  *Id.*  at *5 (quoting *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005)). "In such instances, a liberty interest arises only when an inmate is subject to an 'atypical and significant hardship . . . in relation to the ordinary incidents of prison life.'"  *Id.* (quoting *Wilkinson*, 545 U.S. at 222-23).  "Both the degree and duration of an inmate's confinement in segregation should be considered in order to determine whether a liberty interest exists."  *Id.* (citing *Sandin v. Conner*, 515 U.S. 472, 486 (1995)).

Courts have held that placement of a convicted prisoner in segregation for a relatively short period of time does not present an "atypical and significant" hardship implicating a protected liberty interest.  "We have held that confinement in administrative segregation may qualify as an 'atypical and significant hardship' where 'the prisoner's complaint alleged that he is subject to indefinite administrative segregation.'"  *Thomas-El*, 2024 U.S. App. LEXIS 5493, at *6; *see also Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008) (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, *i.e.*, three years without an explanation from prison officials, implicates a liberty interest); *cf. Jones v. Baker*, 155 F.3d 810, 812-13 (6th Cir. 1998) (holding that two years of segregation while inmate was investigated for murder of prison guard in riot did not implicate a liberty interest entitling him to due process).

Plaintiff states that he was placed on AC status on February 28, 2023, and does not state when he was released or whether he has been.  Nevertheless, the Court finds that the duration of

Plaintiff's placement on AC is not in the nature of an indefinite or years-long placement in segregation that gives rise to an "atypical and significant hardship" that would state a due process claim under Sixth Circuit case law.  Therefore, these claims will be dismissed for failure to state a claim upon which relief may be granted.[4]

### 3. Conditions of confinement

Plaintiff alleges that his conditions of confinement while on suicide watch were "unconscionable" and unsanitary.  He does not state how long he was placed on suicide watch.  He also makes allegations concerning his conditions while put in an "observation dry cell" for six days.  The Court construes these allegations as claims for violation of the Eighth Amendment's Cruel and Unusual Punishments Clause.

The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)).  A plaintiff "must state a plausible constitutional violation against each individual defendant - the collective acts of defendants cannot be ascribed to each individual defendant." *Reilly v. Vadlamudi*, 680 F. 3d 617, 626 (6th Cir. 2012).  Because Plaintiff's allegations concerning these conditions do not specify which Defendant, if any, was responsible for placing him in the alleged conditions, the claims must be dismissed for failure to state a claim upon which relief may be granted.  *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (affirming dismissal of § 1983 claim for or failure to state a claim against defendants in their individual capacity where plaintiff did not allege which of the named defendants were personally

---

[4] As stated above, the Court will allow a due process claim to proceed based on Plaintiff allegations regarding being designated a member of an STG.

responsible for the alleged violations of his rights); *Lister v. Allen Oakwood Corr. Inst.*, No. 3:19-cv-1583, 2020 U.S. Dist. LEXIS 40093, at *7-8 (N.D. Ohio Mar. 9, 2020) (dismissing claims where the plaintiff generically alleged unconstitutional actions were committed by "Defendants" or "they" for failure to specify which defendant or defendants violated the plaintiff's rights). Therefore, Plaintiff's claims will be dismissed for failure to state a claim upon which relief may be granted.

### *4. Opening of cell doors*

Plaintiff also maintains that on two occasions John and Jane Doe KSP officers opened cell doors and left them open for "several moments" where "antagonistic STG members were also housed" but on both occasions "they did not seize the opportunity to attack Grider." The Court construes the allegations as claims for deliberate indifference to safety in violation of the Eighth Amendment.

However, Plaintiff fails to allege facts that support an inference that the doors were left open intentionally to harm Plaintiff and not left open inadvertently. Moreover, Plaintiff alleges no harm from the incident. Plaintiff's allegations fail to raise Plaintiff's right to relief above a speculative level, and therefore, they fail to state a claim. *See Twombly*, 550 U.S. at 555, 570 (holding that an allegation that creates the possibility that a plaintiff might later establish undisclosed facts supporting recovery does not state a plausible claim for relief); *Iqbal*, 556 U.S. at 678 ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.") (cleaned up). Therefore, the allegations regarding the opening of cell doors must be dismissed for failure to state a claim.

### *5. Denial of transfer*

Plaintiff also alleges that his request for a transfer was denied. However, a prisoner has no inherent right under the United States Constitution to be incarcerated in a particular institution. *See Montanye v. Haymes*, 427 U.S. 236, 242 (1976); *Meachum v. Fano*, 427 U.S. 215, 223-25 (1976); *Wilson v. Yaklich*, 148 F.3d 596, 601 (6th Cir. 1998); *Beard v. Livesay*, 798 F.2d 874 (6th Cir. 1986). In addition, Plaintiff has failed to demonstrate any state-created liberty interest in being transferred because in Kentucky, the transfer of prisoners is within the discretion of the corrections cabinet. *See* Ky. Rev. Stat. § 197.065. Therefore, Plaintiff's claim based on being denied a transfer must be dismissed for failure to state a claim upon which relief may be granted.

## IV. CONCLUSION

For the reasons set forth herein, and the Court being otherwise sufficiently advised,

**IT IS ORDERED** that Plaintiff's claims for denial of religious assembly; claims for cruel and unusual punishments, including claims based on his conditions of confinement and the opening of cell doors; conspiracy claims; claims based on challenges to his disciplinary convictions and procedures; claims based on being housed in disciplinary segregation; and denial of a transfer are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(2) for failure to state a claim upon which relief may be granted.

The **Clerk of Court is DIRECTED to terminate** Christopher Agoha as a Defendant in this action because no claims remain against him.[5]

---

[5] Plaintiff named Agoha as a Defendant in the amended complaint but did not sue him in the superseding second amended complaint. Therefore, no claims remain against him.

The Court will enter a separate Service and Scheduling Order to govern the claims that have been permitted to proceed.

Date:   July 29, 2024

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc:     Plaintiff, *pro se*
        General Counsel, Justice & Public Safety Cabinet, Office of Legal Counsel
4414.010

22