**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**PADUCAH DIVISION**

**REGINALD L. GRIDER, JR.** **PLAINTIFF**

**v.** **CIVIL ACTION NO. 5:23-CV-00132-JHM**

**COOKIE CREWS, *et al.*** **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the motion by Defendants Cookie Crews, Commissioner of the Kentucky Department of Corrections ("KDOC"); Randy White and Scott Jordan, Deputy Commissioners of KDOC; Laura Plappert, Kentucky State Penitentiary ("KSP) Warden; Jacob Bruce, KSP Deputy Warden; Lauren Massey and Alex Hearell, KSP Unit Administrators; Sasha Primovich, Ducan Adams, and Amy Fisher, KSP United Administrators and/or Case Treatment Officers; Berton Bare, KSP Internal Affairs Captain; Darren Larue and Ryan Inglish, KSP Internal Affairs Sergeants; Gova Harper, Assistant Security Threat Group Coordinator; Kimberly Anderson, KSP Lieutenant; and Alex Mathis, KSP Recreation Leader, all in their individual and official capacities for summary judgment pursuant to Federal Rule of Civil Procedure 56. (DN 88). Plaintiff Reginald L. Grider, Jr. filed a response. (DN 102). Defendants filed a reply. (DN 106) Accordingly, this matter is fully briefed and stands ripe for decision.

**I.**

At all times relevant to the events discussed in this Memorandum Opinion and Order, Plaintiff was incarcerated at KSP. (DN 27, PageID #: 218). Plaintiff filed the instant *pro se* action under 42 U.S.C. § 1983 alleging violations of his constitutional rights during his incarceration at KSP. (DN 1). Plaintiff filed a number of amended complaints, the Court ordered Plaintiff to file a second amended complaint, which Plaintiff did. (DNs 15, 26). The Court reviewed the second

amended complaint pursuant to 28 U.S.C. § 1915A and allowed: (1) a Fourteenth Amendment Equal Protection claim against Defendants Crews, White, Jordon, Plappert, Bruce, Massey, Primozich, Bare, Larue, and Harper in their individual capacities for damages and in their official capacities for injunctive relief; (2) an Eighth Amendment deliberate indifference to health/safety claim against Defendants Crews, Fisher, Bare, Larue, Inglish, Harper, and Anderson in their individual capacities for damages and their official capacities for injunctive relief; (3) a Fourteenth Amendment Due Process claim against Defendants Crews, White, Jordon, Plappert, Bruce, Massey, Hearell, Primozich, Fisher, Bare, Larue, Inglish, Harper, Adams, Anderson, and Mathis in their individual capacities for damages and their official capacities for injunctive relief. (DN 27). Defendants have denied all claims of liability against them.

**II.**

Before the Court may grant a motion for summary judgment, it must find that there is "no genuine dispute as to any material fact" and that the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-movant must do more than merely show that there is some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts

showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

The fact that a plaintiff is *pro se* does not lessen his or her obligations under Rule 56. "The liberal treatment of *pro se* pleadings does not require the lenient treatment of substantive law, and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage." *Johnson v. Stewart*, No. 08-1521, 2010 U.S. App. LEXIS 27051, at *6-7 (6th Cir. May 5, 2010) (citations omitted). When opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and a party's "status as a *pro se* litigant does not alter" its burden of showing a genuine issue for trial. *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010) (citation omitted). Yet statements in a verified complaint that are based on personal knowledge may function as the equivalent of affidavit statements for purposes of summary judgment. *Weberg v. Franks*, 229 F.3d 514, 526 n.13 (6th Cir. 2000); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992).

## III.

### A. Plaintiff's Allegations

#### *1. Fourteenth Amendment Equal Protection*

Plaintiff alleges that Defendants discriminated against him because he is transgender when they designated Touch$Money, Plaintiff's media platform idea, which has been described as a non-traditional all-inclusive premise to create religious an organization, as a Security Threat Group ("STG"), treated him as its leader, and imposed administrative conflicts on him and two other

inmates. (*Id.*, PageID #: 193-95, 212). Plaintiff maintains that Defendants Bare, Plappert, Massey, and Fisher placed administrative conflicts between Plaintiff and fellow inmates Colton Bruce and Robert Baldwin, because the three inmates are LGBTQ and were involved in a love triangle, rather than because of a legitimate security concern. (*Id.*, PageID #: 193-94). Plaintiff further alleges that Defendants' designation of Touch$Money and treatment of him as an STG leader reflect discriminatory animus toward him and other LGBTQ inmates. (*Id.*, PageID #: 193-96, 209).

***2. Eight Amendment Deliberate-Indifference to Safety***

Plaintiff alleges that Defendants Crews, Fisher, Bare, Larue, Inglish, Harper, and Anderson knew that labeling Touch$Money as an STG, identifying Plaintiff as its leader, and allowing an intercepted letter naming other STG members to reach those inmates caused Plaintiff to be labeled a snitch and targeted for attack. (*Id.*, PageID #: 198-99, 212). Plaintiff maintains that unknown members of two non-Touch$Money STGs declared war on persons associated with Touch$Money and authorized attacks against them on February 28, 2023. (*Id.*, PageID #: 198). He alleges that Defendants knew of and disregarded the resulting substantial risk to his safety but failed to separate him from hostile STG members or otherwise protect him. (*Id.*, PageID #: 198, 203, 212).

Plaintiff alleges that Defendants disregarded danger culminating in violent incidents on March 1 and April 4, 2023. (*Id.*, PageID #: 199-203). He maintains that, during the April 4 incident, inmates Batey and Combs confronted him after removing their restraints, possessed weapons, and joined other inmates in attacking him while staff struggled to regain control. (*Id.*, PageID #: 201-02). Plaintiff alleges that his letters and complaints placed supervisory officials, including Crews, White, and Jordon, on notice of the alleged STG designation, threats, and staff conduct before the April attack, but those officials failed to intervene or investigate adequately. (DN 26, PageID #: 202-03).

### *3. Fourteenth Amendment Due Process*

Plaintiff alleges that Defendants arbitrarily designated him as an STG member without notice, hearing, appeal, and/or any other procedure through which he could challenge the designation. (*Id*., PageID #: 208-09, 212). He maintains that the designation led to disciplinary convictions, restrictive housing, administrative-control status, and mandatory participation in the Transition Unit Program before his release from segregation. (*Id*., PageID #: 195, 199-205, 212). Plaintiff further alleges that the lack of a meaningful method for contesting STG status permitted Defendants to impose adverse consequences based on an unsupported and discriminatory designation. (*Id*., PageID #: 208-11).

## B. Defendants' Motion for Summary Judgment

### *1. Equal Protection*

Defendants argue that Plaintiff has not shown that they treated him differently from any similarly situated non-transgender inmate. (DN 88-1, PageID #: 787-89). They maintain that Plaintiff's allegations of discriminatory animus are generalized and conclusory and do not identify another inmate who was similarly situated in all relevant respects. (*Id*., PageID #: 787-89). Defendants contend that disparate treatment is the threshold element of an equal protection claim and that the Court need not determine Plaintiff's classification or the applicable level of scrutiny unless he first establishes differential treatment. (*Id*., PageID #: 787-89). Defendants therefore argue that Plaintiff's failure to produce evidence of differential treatment entitles them to summary judgment. (*Id*., PageID #: 789).

### *2. Deliberate Indifference to Safety*

Defendants argue that Plaintiff's failure-to-protect claim must be dismissed because he did not timely exhaust the grievance procedure required by the Prison Litigation Reform Act

("PLRA") (*Id*., PageID #: 789-92). They maintain that CPP 14.6 requires Plaintiff to submit a grievance within five business days of an incident and to complete each level of administrative review. (*Id*., PageID #: 790-91). Defendants rely on Grievance Coordinator Robin McCalister's affidavit and grievance records to contend that Plaintiff filed only one grievance alleging a failure to protect him from STG members. (*Id*., PageID #: 791-92; DN 88-2, PageID #: 797-828).

Defendants assert that Plaintiff submitted Grievance No. 23-09-010-G in September 2023 concerning incidents on March 1 and April 4, 2023, approximately five months after the later incident. (*Id*., PageID #: 791-92). They maintain that McCalister rejected the grievance as untimely under CPP 14.6(II)(J)(1)(a)(2). (*Id*., PageID #: 792). Defendants therefore argue that Plaintiff did not properly exhaust his administrative remedies and that the PLRA requires dismissal of the failure-to-protect claims against Defendants. (*Id*., PageID #: 792).

***3. Due Process***

Defendants argue that Plaintiff had no constitutionally protected liberty interest in avoiding an STG designation or remaining in a particular security classification. (*Id*., PageID #: 792-95). They maintain that changes in custody level, housing, institutional placement, privileges, or programming do not independently create a protected liberty interest. (*Id*., PageID #: 793-95). Defendants rely on Deputy Warden Lauren Massey's affidavit to contend that an STG designation alone does not affect an inmate's custody score. (*Id*., PageID #: 793-95; DN 88-3, PageID #: 834-37).

Defendants contend that custody scores instead depend on behavioral criteria, including the number and severity of disciplinary convictions and whether an offense involved institutional violence. (*Id*., PageID #: 794-95; DN 88-3, PageID #: 836-37). They acknowledge that convictions for specified STG-related disciplinary offenses may affect custody classification but

argue that neither the resulting classification nor loss of privileges implicates a protected liberty interest. (*Id.*, PageID #: 795). Defendants therefore contend that they are entitled to summary judgment on the due-process claim. (*Id.*, PageID #: 795).

**C. Plaintiff's Response**

***1. Equal Protection***

Plaintiff argues that Defendants treated him differently because he is transgender by imposing administrative conflicts on him, and inmates Baldwin and Bruce while not imposing comparable conflicts on all other inmates identified as STG members. (DN 102, PageID #: 974-75). He maintains that this selective application establishes discriminatory animus and lacks a rational relationship to a legitimate penological interest. (*Id.*, PageID #: 974-75). Plaintiff further contends that discrimination against transgender persons constitutes sex discrimination and is subject to heightened scrutiny. (*Id.*, PageID #: 979-80).

Plaintiff relies on *Bostock v. Clayton County* and decisions from other circuits to argue that Defendants knew or reasonably should have known that discrimination based on transgender status violated the Equal Protection Clause. (*Id.*, PageID #: 973-74, 979-81).

***2. Deliberate Indifference to Safety***

Plaintiff argues that Defendants misconstrue the surviving failure-to-protect claim because the Court allowed it to proceed under the Fourteenth Amendment rather than the Eighth Amendment. (*Id.*, PageID #: 969, 975). He contends that CPP 14.6 made the grievance process unavailable because his safety allegations were tied to disciplinary reports and the policy excluded disciplinary matters from the grievance process. (*Id.*, PageID #: 975). Plaintiff therefore maintains that he had no available administrative remedy to exhaust before filing suit. (*Id.*, PageID #: 975).

### *3. Due Process*

Plaintiff argues that the version of CPP 15.2 used to define STG activity and support his designation was implemented by internal memorandum effective March 1, 2022, but was not duly promulgated through the Legislative Research Commission under Kentucky law. (*Id*., PageID #: 970-73). He maintains that Ky. Rev. Stat. § 13A.130 prohibits an agency from using an internal policy or memorandum to modify or expand an administrative regulation and render a noncompliant policy void and unenforceable. (*Id*., PageID #: 972). Plaintiff therefore contends that Defendants lacked lawful authority to designate him as an STG member or punish purported STG activity under that version of CPP 15.2. (*Id*., PageID #: 971-73, 976-77). He argues that this alleged misuse of state-conferred power deprived him of the process guaranteed by the Fourteenth Amendment and creates a factual dispute for trial. (*Id*., PageID #: 969-73, 977).

## D. Defendants' Reply

### *1. Equal Protection*

Defendants reply that neither Plaintiff's complaint nor his response identify any similarly situated non-transgender inmate who received different treatment. (DN 106, PageID #: 990-91). They argue that conclusory assertions do not establish disparate treatment and that Plaintiff's equal-protection claim fails at the threshold. (*Id*., PageID #: 990-91). Defendants further contend that Plaintiff cannot proceed under a class-of-one theory because he grounds his claim in alleged discrimination based on transgender status and does not identify similarly situated persons who received different treatment without a rational basis. (*Id*., PageID #: 990 n.1). They therefore maintain that they are entitled to summary judgment. (DN 106, PageID #: 991).

***2. Deliberate Indifference to Safety***

Defendants reply that Plaintiff's reliance on the exclusion for disciplinary matters does not excuse his failure to file a timely failure-to-protect grievance. (DN 106, PageID #: 991-92). They maintain that untimeliness independently supported the rejection of the grievance and that Plaintiff does not explain why he failed to submit the grievance within five business days of either incident as required per department policy. (*Id*., PageID #: 991-92). Defendants further argue that Plaintiff cannot establish that the grievance process was unavailable because he does not show affirmative efforts to comply with CPP 14.6. (*Id*., PageID #: 991-92). They therefore contend that the PLRA requires dismissal of the failure-to-protect claims. (*Id*., PageID #: 992).

***3. Due Process***

Defendants reply that caselaw establishes that an STG designation and an increase in security classification do not impose an atypical and significant hardship in relation to the ordinary incidents of prison life and therefore do not trigger constitutional protection. (*Id*., PageID #: 992-94). Defendants maintain that Plaintiff had no constitutional right to a hearing before receiving the alleged STG designation. (*Id*., PageID #: 993-94). Defendants further argue that Plaintiff improperly conflates the surviving due-process challenge to his STG designation with his challenge to STG-related disciplinary convictions and the promulgation of CPP 15.2. (*Id*., PageID #: 994 n.2). They maintain that the Court's screening order dismissed Plaintiff's challenges to the disciplinary proceedings and that those distinct claims are not part of the surviving due-process claim. (*Id*., PageID #: 994 n.2; DN 27, PageID #: 233-34). Defendants therefore contend that the absence of a protected liberty interest entitles them to summary judgment. (*Id*., PageID #: 993-94).

## IV.

### *A. Fourteenth Amendment Equal Protection*

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). "To state an equal protection claim 'a plaintiff must demonstrate that the government treated the plaintiff disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis." *Brown v. Blackwell*, No. 11-3133, 2011 U.S. App. LEXIS 26116, at *4 (6th Cir. Sep. 28, 2011) (quoting *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. Of Shelby, Mich.*, 470 F.3d 286, 298 (6th Cir. 2006)).

In this instance, Plaintiff has failed to show that he received disparate treatment as compared to a similarly situated person. Notably, Plaintiff alleges that Defendants' actions were unjust and motivated by discriminatory animus based on Plaintiff's status as an LGBTQ prisoner. (DN 26, PageID #: 196). Further, in his response, Plaintiff contends that he was "treated differently due to being transgender, as administrative conflicts were placed on him to keep him separated from others[.]" (DN 102, PageID #: 974). Notably, Plaintiff fails to explain or provide evidence that any administrative conflicts placed on him were not placed on similarly situated inmates or that he was treated differently than other prisoners. "Conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not enough to defeat a well-supported motion for summary judgment." *Ferrari v. Ford Motor Co.*, 826 F.3d 885, 897-98 (6th Cir. 2016) (citation omitted). As Plaintiff has not met his burden of proof regarding his equal protection claim, Defendants are entitled to summary judgment on this claim.

***B. Failure to Exhaust Administrative Remedies Regarding Eighth Amendment Deliberate Indifference Claim***

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court, interpreting § 1997e, has expressly stated: "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). Failure to exhaust administrative remedies under the PLRA is an affirmative defense for which defendants bear the burden of proof. *Surles v. Andison*, 678 F.3d 452, 455 (6th Cir. 2012). Accordingly, summary judgment may be granted "'only if defendants establish the absence of a 'genuine dispute as to any material fact' regarding non-exhaustion.'" *Id*. at 456 (quoting *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011)). Because defendants also bear the burden of persuasion for this issue at trial, their "initial summary judgment burden is 'higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Id*. at 455-56 (quoting *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001)). The burden of defendants asserting the affirmative defense of exhaustion is satisfied where the defendants produce an administrative policy that governs the filing of grievances and shows that the plaintiff failed to fully exhaust his administrative remedies pursuant to the policy. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006).

In order "to properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules', rules that are

defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007) (citation omitted) (quoting *Woodford*, 548 U.S. at 88). To exhaust a claim, a prisoner must proceed through all of the steps of a prison's administrative process, *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999), and failure to "properly" exhaust bars suit in federal court. *Woodford*, 548 U.S. at 93. "Proper exhaustion" means that the plaintiff complied with the administrative "agency's deadlines and other critical procedural rules." *Id*. at 90-91. But an inmate need only exhaust those remedies that are "available"; if an administrative remedy "is not capable of use to obtain relief," then the PLRA will not act as a barrier to suit. *Ross v. Blake*, 578 U.S. 632, 642 (2016).

In this instance, the record reflects that between January 1, 2021, and June 20, 2024, Plaintiff filed a single grievance related to KSP officials and/or employees allegedly failing to protect Plaintiff from being targeted and assaulted by STG members. (DN 88-2, PageID #: 798). That grievance (Grievance No. 23-09-010-G) was filed on September 4, 2023, and reviewed on September 6, 2023. (*Id*., PageID #: 828). Therein, Plaintiff complained that the Justice and Public Safety Cabinet and the Department of Corrections failed to protect "me and my Touch$Money Religious Group from an alleged white supremacy STG members." (*Id*.). Plaintiff then cited altercations that took place on March 1, 2023, and April 4, 2023. (*Id*.). The grievance was rejected as untimely pursuant to CPP 14.6(II)(J)(1)(a)(2) which provides that a grievance must be submitted within five (5) business days after an incident. (*Id*., PageID #: 807, 826). As the grievance was submitted months after the alleged incidents, it was properly rejected as untimely pursuant to the prison's grievance policies. Accordingly, because the grievance was not timely filed, Plaintiff failed to properly exhaust his administrative remedies regarding his deliberate indifference claim and Defendants are entitled to summary judgment on it.

### *C. Fourteenth Amendment Due Process*

"[T]he Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). The Supreme Court has held that a prisoner does not have a protected liberty interest in prison or jail disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 486-87 (1995). Further, the Sixth Circuit has held that "an increase in security classification . . . does not constitute an 'atypical and significant' hardship in relation to the ordinary incidents of prison life because a prisoner has no constitutional right to remain incarcerated in a particular prison or to be held in a specific security classification." *Harbin-Bey v. Rutter*, 420 F.3d 571, 577 (6th Cir. 2005) (internal quotation marks and citation omitted). Plaintiff contends that Defendants violated his Fourteenth Amendment Due Process rights by designating him as a STG member, absent a hearing where he could challenge or appeal the designation.[1] As Plaintiff has no liberty interest in prison disciplinary proceedings and Plaintiff has not alleged that his designation as a STG member would impact the duration of his sentence, he has failed to state a proper claim under the Fourteenth Amendment Due Process clause. Accordingly, Defendants are entitled to summary judgment on this claim.

[1] Plaintiff's response seems to conflate his due process challenge of his STG classification with a challenge to convictions for STG related offenses based on the allegedly improper promulgation of those offenses found in CPP 15.2. (DN 102, PageID #: 969-73, 976-77). However, this Court dismissed Plaintiff's claims challenging the disciplinary proceedings against him as alleged in the Second Amended Complaint. (DN 27, PageID #: 233-24).

**V.**

For the reasons set forth above, **IT IS ORDERED** that Defendants' motion for summary judgment (DN 88) is **GRANTED**. The Court will enter a separate judgment consistent with this Memorandum Opinion and Order.

Date: September 25, 2026

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc: Plaintiff, *pro se*
Counsel of record
4414.016